UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHAWN S.[1], | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04046-JPH-MPB |
| | ) | |
| ANDREW M. SAUL Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Shawn S. seeks judicial review of the Social Security

Administration's ("SSA's") decision denying his petition for disability insurance

benefits and supplemental security income.  He argues that the decision did

not properly address his migraine headaches.  For the reasons below, the

decision is **AFFIRMED**.

## I.
## Facts and Background

On November 2, 2015, Plaintiff filed an application for a period of

disability and disability insurance benefits as well as an application for

supplemental security income.  Dkt. 6-2 at 16 (R. 15).  He alleged that his

disability began on September 1, 2014.  *Id.*  On March 11, 2016, the SSA

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

denied both applications. *Id.* On reconsideration, SSA again denied his claims. *Id.*

Administrative Law Judge ("ALJ") Teresa A. Kroenecke held a hearing in June 2018, *id.*, and denied Plaintiff's benefits on October 2, 2018, *id.* at 24–25 (R. 23–24). In her decision, the ALJ found that:

- At step one, Plaintiff had not engaged in "substantial gainful activity"[2] since his alleged onset date of September 1, 2014. *Id.* at 18 (R. 17).

- At step two, Plaintiff had severe impairments of "seizure disorder and migraine headaches." *Id.*

- At step three, Plaintiff did not have "an impairment or combination of impairments that m[et] or medically equal[ed] the severity of one of the listed impairments." *Id.* at 20 (R. 19).

- Between steps three and four, Plaintiff had the Residual Functional Capacity ("RFC") "to perform light work." *Id.* at 20–21 (R. 19–20). In doing that light work, Plaintiff could "frequent[ly] stoop[], kneel[], crouch[], crawl[], balanc[e], and climb[] ramps and stairs." *Id.* at 21 (R. 20). However, Plaintiff could not climb "ladders, ropes, or scaffolds," drive, or be exposed "to extreme heat, extreme cold, humidity, wetness, vibrations, or hazards such as dangerous heights or machinery." *Id.*

- At step four, Plaintiff could perform his "past relevant work as a warehouse worker," which did "not require the performance of work-related activities precluded" by his RFC. *Id.* at 23 (R. 22).

- Alternatively, at step five, after considering Plaintiff's "age, education, work experience," and RFC, the ALJ found that other jobs exist "in significant numbers in the national economy that Plaintiff could perform, including positions like sorter, routing clerk, and collator operator. *Id.* at 23–24 (R. 22–23).

---

[2] SSA regulations define "substantial gainful activity" as work activity that is both "substantial" ("involves significant physical or mental activities") and "gainful" ("usually done for pay or profit, whether or not a profit is realized"). 20 C.F.R. §§ 404.1572(a), 416.972(b).

On August 1, 2019, SSA's Appeal Council denied Plaintiff's request for review. *Id.* at 2 (R. 1). On September 27, 2019, Plaintiff brought this action for review of SSA's denial of benefits under 42 U.S.C. §§ 405(g), 1383(c)(3). Dkt. 1.

## II.
## Applicable Law

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts." *Id.* at 217. First, it requires "an inability to engage in any substantial gainful activity." *Id.* And second, it requires a physical or mental impairment that explains the inability and "has lasted or can be expected to last . . . not less than 12 months." *Id.* "The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* at 274.

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

3

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citation omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). "If a claimant satisfies steps one and two, but not three, then she must satisfy step four." *Id.* "Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Id.*

After step three, but before step four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and, if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g). The burden of proof is on the claimant for steps one through four but shifts to the Commissioner at step five. *See Clifford*, 227 F.3d at 868.

When an applicant seeks judicial review of a benefits denial, courts will uphold an "ALJ's decision if it uses the correct legal standards, is supported by substantial evidence, and builds an accurate and logical bridge from the evidence to the ALJ's conclusion." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Courts "review the entire record, but . . . do not replace the ALJ's judgment . . . by reconsidering facts, re-weighing or resolving conflicts in the

4

evidence, or deciding questions of credibility." *Id.* A court's "review is limited also to the ALJ's rationales, meaning the Court cannot uphold an ALJ's decision by giving it different ground to stand upon." *Id.* (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).

### III.
### Analysis

Plaintiff argues that the ALJ erred by not discussing Listing 11.02 and by not seeking a medical opinion on that Listing. Dkt. 8 at 4, 15–22. He also contends that the ALJ's RFC analysis did not properly follow SSA regulations in assessing his subjective symptoms and failed to consider the impact of his headaches on his ability to work. *Id.* at 4, 24–28.[3] The Commissioner contends that the ALJ reasonably evaluated Plaintiff's headaches and that substantial evidence supports the ALJ's decision. *See* dkt. 12.

#### 1. Listing Analysis

Plaintiff argues that the ALJ erred at step three by not analyzing whether Plaintiff's migraine headaches met or medically equaled the severity of Listing 11.02 (Epilepsy).[4] Dkt. 8 at 4, 15–23. The Commissioner responds that Plaintiff: (1) failed to explain how he met or equaled Listing 11.02, (2) did not

---

[3] Plaintiff frames this as two separate arguments. *See* dkt. 8 at 4. However, because both arguments present substantially similar issues about the proper consideration of headache evidence in the RFC determination, this order combines them.

[4] Listing 11.02 contains four descriptions of "typical seizure[s],", including "generalized tonic-clonic seizures" and "dyscognitive seizures." 20 C.F.R. Pt. 404, Subpt. P, App. 1. Although there is no specific Listing for migraines or headaches, SSA directs that "a primary headache disorder, alone or in combination with another impairment(s)" may "medically equal[] a listing," and that "Epilepsy (listing 11.02) is the most closely analogous listed impairment." SSR 19-4p, 2019 WL 4169635, at *7.

show that the ALJ misstated or ignored evidence in the record, (3) ignored medical experts' conclusions, and (4) relied on inapplicable SSA policy statements. Dkt. 12 at 5–8.

A claimant has the burden to present medical findings that either meet an impairment described in SSA's Listing of Impairments regulation or equal in severity to the symptoms described in a Listing. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citing 20 C.F.R. §§ 404.1525, 404.1526). "If a claimant has an impairment that meets or equals an impairment found in the Listing of Impairments, a claimant is presumptively eligible for benefits." *Id.* (citing 20 C.F.R. § 404.1520(d)). "[T]he responsibility for deciding medical equivalence rests with the [ALJ]." 20 C.F.R. § 404.1526(e)(3). ALJs must "compare [a claimant's] findings with those for closely analogous listed impairments" to determine whether the claimant's "impairment(s) are at least of equal medical significance to those of a listed impairment." 20 C.F.R. § 404.1526(b)(2). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick*, 775 F.3d at 935 (citation omitted).

At the hearing in this case, Plaintiff's counsel argued that Plaintiff's headaches equaled Listing 11.02, *see* dkt. 6-2 at 35–37 (R. 34–36), and the ALJ's decision later explained that Plaintiff suffered from the "severe impairment[]" of "migraine headaches" at step two, *see id.* at 18 (R. 17). At step three, the ALJ gave "considerable deference" to "the opinions of the reviewing

6

physicians and psychologists with Disability Determination Services" and stated that "no expert designated by the Commissioner" had found that "any of the claimant's impairments equal[ed] a section of the listed impairments." *Id.* at 20 (R. 19). The ALJ then "note[d]" that Plaintiff's "migraines cannot meet a Listing," stating:

> [M]igraines is not a listed impairment in said Listings. As for the claimant's migraines, the closest analogous Listing is 11.03. Thus, I must determine whether his migraines medically equals [sic] Listing 11.03 (1F, 2F, 6F, 8F).

*Id.* But the ALJ did not complete this analysis at step three. *See id.*

The ALJ thus erred in two ways. First, the ALJ's decision cited Listing 11.03, *id.*, rather than Listing 11.02. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing 11.03 shown as "Reserved"). Second, the ALJ did not finish the Listing discussion she began under "Step Three." *See* dkt. 6-2 at 20 (R. 19).

However, neither error warrants remand because the ALJ still offered "more than perfunctory analysis" of Plaintiff's headaches. *Minnick*, 775 F.3d at 935; *see Jeske*, 955 F.3d at 589–92. As the Commissioner points out, the ALJ relied on the conclusion of two medical experts that Plaintiff did not meet or medically equal a Listing. Dkt. 6-2 at 20 (R. 19); *see* dkt. 12 at 7. Two state-agency physicians submitted "Disability Determination and Transmittal" forms finding no Listings applicable to Plaintiff. Dkt. 6-3 at 22–23, 46–47 (R. 92–93, 116–17). Since "these forms conclusively establish that consideration . . . has been given to the question of medical equivalence," an "ALJ may properly rely upon" them for Listing determinations. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

And the ALJ discussed Plaintiff's headaches elsewhere in her decision.
*See Zellweger v. Saul*, No. 19-2472, 2021 WL 129658, at *3 (7th Cir. Jan. 14,
2021) (holding that courts may "review[] an ALJ's step-three determination in
light of elaboration and analysis appearing elsewhere in the decision").  When
discussing Plaintiff's RFC, the ALJ wrote:

> The claimant's purported frequency and severity of migraines are
> also inconsistent with the medical evidence of record.  For example,
> he primarily takes Excedrin for headaches although his neurologist
> had prescribed Fioricet and Trileptal (e.g., 2F; 8F/1, 82).  On at least
> one occasion, the claimant's headaches were attributed to chronic
> sinusitis (8F/93-94).  Based on the medical evidence of record, the
> undersigned adopted appropriate seizure precautions and even
> further reduced him to the light exertional level as an additional
> safety precaution.  These same limitations were also adopted to
> address his migraines.  A complete inability to work is not supported
> by the medical evidence of record.

Dkt. 6-2 at 22 (R. 21).  Although the ALJ could have articulated her reasoning
more clearly, this discussion explains why the ALJ discounted evidence relating
to Plaintiff's headaches.  *See Jeske*, 955 F.3d at 589–92 (upholding listing
determination when ALJ's decision explained why claimant's "symptoms were
not fully substantiated by the other evidence, which showed her symptoms
were less severe").  When viewed in conjunction with the ALJ's reliance on two
medical doctors' Listing determinations, this discussion offers more than
"perfunctory" analysis to support the ALJ's conclusion that Plaintiff's
headaches did not medically equal the criteria for the four seizure variants
described in Listing 11.02.  *See Minnick*, 775 F.3d at 935; 20 C.F.R. Pt. 404,
Subpt. P, App. 1.

Next, Plaintiff claims that Social Security Ruling ("SSR") 96-6p required the ALJ to seek "the opinion of a medical advisor as to whether [Plaintiff's] impairments equaled a Listing." Dkt. 8 at 4, 20–21. But as discussed above, the ALJ pointed to two physicians' "Disability Determination and Transmittal" forms finding no Listings applicable to Plaintiff. Dkt. 6-2 at 20 (R. 19); dkt. 6-3 at 22–23, 46–47 (R. 92–93, 116–17). And the Commissioner is correct that SSR 17-2p "rescind[ed] and replace[d] SSR 96-6p" as of March 2017. *See* SSR 17-2p, 2017 WL 3928306, at *1. Under SSR 17-2p, SSA no longer "require[s] the adjudicator to obtain [Medical Expert] evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment." *Id*. at *4. Therefore, Plaintiff's argument does not alter the Court's conclusion that the ALJ's step-three analysis was adequate.

**2. RFC's Assessment of Headache Evidence**

Next, Plaintiff argues that the ALJ did not treat his subjective headache symptoms properly under SSA regulations and thus failed to support the finding that Plaintiff had a "light residual functional capacity and an ability to maintain full[-]time work." Dkt. 8 at 4; *see* dkt. 6-2 at 20–21 (R. 19–20). The Commissioner contends that the ALJ reasonably evaluated his headaches and that substantial evidence supports her decision. Dkt. 12 at 8–10.

If an ALJ cannot make a fully favorable disability determination "based solely on objective medical evidence," then he should "carefully consider other evidence in the record" and "the factors set forth in 20 C.F.R. § 404.1529(c)(3)"

to evaluate "the intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), at *6–8; *see* 20 C.F.R. § 404.1529(c)(3). These factors include: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) factors that precipitate and aggravate the symptoms, (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms, and (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. *Id.*

Plaintiff's argument here relies on the SSR 16-3p factors but does not identify or explain which factor the ALJ failed to consider. *See* dkt. 8; dkt. 13. And it appears that the ALJ's decision addressed each factor required for evaluating Plaintiff's subjective symptoms. *See* dkt. 6-2 at 21–22 (R. 20–21). First, the ALJ considered the duration, frequency, and intensity of Plaintiff's headaches and the effects that this had on his daily activities. For example, the ALJ recognized Plaintiff's testimony that he has "migraines from the minute [he] get[s] up in the morning" and that "his headache pain level at the hearing was 8/10." Dkt. 6-2 at 21. The ALJ also noted that the Plaintiff could still "help[] his wife care for their children and do household chores, such as laundry and letting the dog out." *Id.*

The ALJ also assessed factors that precipitate and aggravate the symptoms. For instance, the ALJ considered that "[o]n at least one occasion, the claimant's headaches were attributed to chronic sinusitis." *Id.* at 22 (R. 21)

10

(citing 8F/93-94).  Next, the ALJ weighed the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms.  The ALJ recognized that Plaintiff primarily takes Excedrin for his headaches even though "his neurologist had prescribed Fioricet and Trileptal."  Dkt. 6-2 at 22 (R. 21) (citing 2F; 8F/1, 82).  The ALJ also noted that Plaintiff "reported doing well on medications for . . . headaches" at his neurology appointments."  *Id.*  Finally, the ALJ considered treatment, other than medication, that Plaintiff receives or has received for relief of pain or other symptoms.  The ALJ noted Plaintiff's three visits to the ER for "seizure aura/headache" from 2016 to 2017.  Dkt. 6-2 at 22 (R. 21).  The ALJ's decision thus appears to address each required factor in assessing Plaintiff's subjective symptoms, and Plaintiff has not otherwise identified or explained a specific error.  *See Apke v. Saul*, 817 F. App'x 252, 257–58 (7th Cir. 2020) (deferring to ALJ when plaintiff failed to show ALJ's subjective symptom evaluation was "patently wrong").

Still, Plaintiff contends that this case requires remand based on *Moon v. Colvin*, 763 F.3d 718 (7th Cir. 2014).  Dkt. 8 at 25.  There, the Seventh Circuit held that the ALJ failed to build a logical bridge between the evidence and his decision denying a claimant benefits when he "improperly discounted . . . evidence of chronic migraine headaches" in determining the claimant's RFC.  *Colvin*, 763 F.3d at 719.  The ALJ erred because he improperly described a doctor's visit, misinterpreted MRI evidence, placed too much weight on the claimant's work history before her migraines became worse, and unfairly "split

11

hairs" when assessing the claimant's credibility. *Id.* at 721–22.  Unlike the specific flaws identified in the ALJ's decision in *Moon*, no comparable flaw is readily apparent here, and Plaintiff has not identified one. *See* dkt. 8.  Instead, Plaintiff has broadly contended that the RFC did not address his headaches. *See id.* at 4, 24–25.  But the ALJ noted that the RFC included "appropriate . . . precautions and even further reduced him to the light exertional level as an additional safety precaution. . . .  to address his migraines." Dkt. 6-2 at 22 (R. 21).  Without identifying a specific error in the ALJ's subjective symptom or RFC analysis, Plaintiff has not shown that the decision requires remand. *See Carter v. Astrue*, 413 F. App'x 899, 906 (7th Cir. 2011) ("It is not this court's responsibility to research and construct the parties' arguments . . . .") (citation omitted).

## IV.
## Conclusion

For the reasons above, the decision is **AFFIRMED**.  Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 2/3/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

12

Distribution:

Alison T. Schwartz
SOCIAL SECURITY ADMINISTRATION
alison.schwartz@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com